**John C. BRIGGS and Carol G. Briggs, Plaintiffs and Respondents,**

v.

**Steven HOLCOMB, Defendant and Appellant.**

**No. 860027–CA.**

Court of Appeals of Utah.

July 29, 1987.

Larry R. Keller, Salt Lake City, and Michael S. Eldredge, Park City, for defendant and appellant.

Robert F. Babcock, Walstad & Faust, Salt Lake City, for plaintiffs and respondents.

Before ORME, GARFF and DAVIDSON, JJ.

ORME, Judge:

After an unrecorded teleconference, the district court granted summary judgment

in favor of respondents Briggs, holding that they were entitled to elect the remedy of foreclosure after appellant Holcomb defaulted on the obligations under a Uniform Real Estate Contract which had been assigned to him. Holcomb seeks outright reversal of the summary judgment or, alternatively, a new hearing so a record can be made. We affirm.

## FACTUAL BACKGROUND

On October 1, 1980, the Briggs, as sellers, entered into a Uniform Real Estate Contract for the sale of apartment units in Salt Lake City. The buyers, Edmunds, Bowen, and Evans ("Edmunds"), simultaneously with the execution of the contract gave the Briggs a $13,000 note "as additional security ... due to no downpayment," secured by an assignment of contract and a quitclaim deed. The quitclaim deed, with instructions, was held in escrow by Alta Title Company. On August 9, 1982, Edmunds sold the property to Holcomb. That sale was memorialized by an assignment to Holcomb of the buyer's rights under the 1980 contract with Briggs.

Holcomb fell behind in the payments almost immediately. The Briggs threatened to foreclose, but the parties worked out a compromise agreement. Holcomb again fell behind in the payments. Under paragraph 16C of the Uniform Real Estate Contract, the Briggs elected to accelerate the payments, treat the contract as a note and mortgage, and foreclose. Holcomb failed to cure his default after receipt of notice from the Briggs.

The Briggs brought this action and moved for summary judgment. Holcomb counterclaimed, alleging that Edmunds misrepresented the nature of the contract. Holcomb further claimed that by accepting Edmunds' quitclaim deed and assignment for security, the Briggs had elected as their remedy that provided in paragraph 16A of the contract, which would allow the Briggs to retake possession of the property and keep all payments as liquidated damages.[1]

At this point, the facts take an unusual twist. The hearing on the Briggs' motion for summary judgment was held via teleconference on January 27, 1984, as part of an experiment conducted at the Utah State Bar's mid-year meeting. No transcript of the teleconference was kept, in accordance with Rule 2(k) of the Rules of Practice of the Third District Court. See Note 3, infra. Counsel for Holcomb participated from the hospital where his wife was about to give birth. Counsel for Holcomb was unaware that no record was being made. To make matters worse, his secretary had failed to file (and apparently lost) his memorandum in opposition to the motion. Not only was his memorandum not before the court, but he had received opposing counsel's memorandum only fifteen minutes before the teleconference. In spite of these bizarre circumstances, Holcomb's counsel, understandably not wishing to inconvenience the trial court judge and the many lawyers attending the Bar conference, failed to request a continuance.[2]

Holcomb raises two principal issues on appeal. First, whether Rule 2(k) of the Third District Court Rules of Practice, which allows unrecorded hearings, is unconstitutional, and second, whether the trial court erred in granting summary judgment.

## COURTS OF RECORD

Under the Utah Constitution, district courts are courts of record. Utah Const. Art. VIII, § 1. We share appellant Holcomb's concern about the selective making of records in the face of that requirement. Of course, the problem is larger than the local procedure permitting unre-

---

1. In his answer, Holcomb did not use the term "election of remedies" but did allege that the Briggs could not foreclose when they had already received any and all interest Holcomb could claim when they received the contract assignment and the quitclaim deed.

2. In hindsight, counsel should have acquainted the court with the exigencies of his situation and requested a continuance. No doubt the court would have granted a continuance, but the teleconference could have gone forward as though it were real so that the Bar could be enlightened as to the merits of teleconferencing.

corded teleconferences.[3] Other areas of concern include law and motion practice, closing arguments, and conferences in chambers. Although consistently making a record of all proceedings imposes a greater burden on the trial court and court reporters,[4] it is impossible for an appellate court to review what may ultimately prove to be important proceedings when no record of them has been made.

Notwithstanding this concern, we are convinced that although prejudicial error can result from failure to make a complete record, we need not reach the issue of whether Rule 2(k) is unconstitutional because, in the instant case, the potential for prejudice is remedied by the intensive scrutiny given summary judgments on appeal.

## SUMMARY JUDGMENT

Summary judgment is appropriate whenever "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Utah R.Civ.P. 56(c). On reviewing a summary judgment, an appellate court applies the same standard as that applied by the trial court. *Durham v. Margetts*, 571 P.2d 1332, 1334 (Utah 1977). "[W]e consider the evidence in the light most favorable to the losing party, and affirm only where it appears there is no genuine dispute as to any material issues of fact, or where, even according to the facts as contended by the losing party, the moving party is entitled to

judgment as a matter of law."[5] *Themy v. Seagull Enterprises, Inc.*, 595 P.2d 526, 528–29 (Utah 1979).

■ After a careful and independent review of the record, we find that the Briggs were entitled to judgment as a matter of law. In his lengthy affidavit, which was spared the fate of the memorandum, Holcomb avers that Edmunds made misrepresentations about the effect of the quitclaim deed and assignment of the contract. However, no facts are set forth which would make these misrepresentations attributable to the Briggs. If Edmunds misrepresented the legal effect of the instruments, Holcomb might conceivably have a cause of action against Edmunds. *But see, e.g., Gadd v. Olson*, 685 P.2d 1041, 1044 (Utah 1984) (misrepresentations of law or of the legal effect of contracts and writings do not generally constitute fraud). However, absent facts which would suggest Edmunds was the agent of the Briggs or perhaps that the Briggs knew of Holcomb's reliance on the misrepresentations made by Edmunds but failed to set the record straight, Edmunds' alleged misrepresentations cannot defeat the Briggs' properly supported motion for summary judgment. Holcomb's affidavit contains no such facts nor any others which, if ultimately believed by the fact finder, would defeat the Briggs' claim.

■ In addition, our review of the documents shows that they are unambiguous and that the Briggs clearly reserved the right to elect any of the remedies in para-

**3.** Rule 2(k) of the Third Judicial District Rules of Practice states: "The court in civil matters on its motion or at a party's request may direct argument of any motion by telephone conference without court appearance. A verbatim record shall be made of all such telephone arguments and the rulings thereon if requested by any counsel." Holcomb's counsel could have preserved the record for appeal by timely requesting a verbatim record. *But see* Note 4, *infra.*

**4.** In a letter to Holcomb's counsel informing him that there was no record of the January 27, 1984 hearing, the trial court noted that "[i]t is very difficult if not impossible for a court reporter to keep an accurate record of a telephone

conference. This is due to the fidelity of the equipment, and the fact that it is very helpful to court reporters to have the person speaking present."

**5.** Clearly, then, any failure of our record to include the misplaced memorandum or a transcript of the teleconference is harmless, as we will independently look at the *facts* properly before the trial court and decide whether any material *facts* are in dispute. While we do not have the benefit of the memorandum nor a transcript of counsel's argument to the trial court to guide us to the disputed facts or to explain the law which makes those facts material, we of course have the benefit of the briefs on appeal which fulfill that same purpose.

graph 16 of the Uniform Real Estate Contract. Delivery of the assignment and quit-claim deed merely enhanced the efficacy of certain of the available remedies. Thus, if the Briggs wished to pursue the 16A remedy, they could direct Alta Title to record the quit claim deed, thereby memorializing forfeiture of the buyer's rights. But nothing *required* that avenue. On the contrary, the alternative under 16C was still available to the Briggs. Indeed, Holcomb stipulated in an agreement entered into with Briggs in October 1982 "that his payments are delinquent pursuant to paragraph 16C of Uniform Real Estate Contract."

Accordingly, we affirm. Each party shall bear its own costs of appeal.

GARFF and DAVIDSON, JJ., concur.