851 P.2d 640 (1993)
COUNTRY OAKS CONDOMINIUM MANAGEMENT COMMITTEE, Plaintiff and Appellant,
v.
Lon L. JONES; Timothy E. Carn; Frank Ferrante; A.C. Avery; Lawanna R. Packer, Trustee; James C. Kaiserman; and GTT Investments, a Utah general partnership, Defendants and Appellees.
No. 910103.
Supreme Court of Utah.
April 16, 1993.
Richard A. Rappaport, William B. Wray, Salt Lake City, for Carn, Avery, Jones, and Packer.
Frank Ferrante, pro se.
James C. Kaiserman, pro se.
Richard W. Jones, Ogden, for appellant.
ZIMMERMAN, Justice:
Country Oaks Condominium Management Committee (the "Committee") appeals from a summary judgment in favor of appellees, all of whom own or have owned undeveloped interests in the Country Oaks Condominium project. The sole issue we address is whether the interests appellees owned in the project constitute "units" within the meaning of the condominium declaration they entered into at the time of purchase. Because we conclude that the trial court did not err in holding that appellees' interests in the project were not units, we affirm.
The facts are not in dispute. The Committee operates Country Oaks Condominium, an expandable condominium project created in 1975 when the project developer recorded a declaration in Davis County. In 1978, the final phases of the project were created by the recording of a supplemental declaration and a survey map that identified certain parcels in which the interests are located. All parties agree that this map and the two declarations define appellees' interests in the project.[1] The parcels of land at issue are undeveloped, but some are accessible by paved streets and some have been planted with grass.
Under the condominium's bylaws, which the declarations incorporate, all unit owners are required to pay a proportionate share of the cost of maintaining common areas. Pursuant to these provisions, the Committee assessed fees against appellees for street maintenance, weed control, and cleanup of vacant lots. When appellees did not pay these fees, the Committee filed liens on their interests and brought a foreclosure *641 action in district court.[2] The Committee moved for summary judgment. The court denied the motion, ruling that appellees were not unit owners under the declarations or within the meaning of the Condominium Ownership Act (the "Act"), Utah Code Ann. §§ 57-8-1 to -36, but rather were owners of a "right to develop condominiums." Appellees then moved for summary judgment, which the trial court granted based on its previous ruling. The Committee now appeals.
We first state the standard of review. Because summary judgment by definition only resolves questions of law, we review the trial court's conclusions for correctness. See, e.g., Allen v. Prudential Property & Casualty Ins. Co., 839 P.2d 798, 800 (Utah 1992); Landes v. Capital City Bank, 795 P.2d 1127, 1129 (Utah 1990).
On appeal, the Committee argues that the declarations and map provide that all land within the expanded project area is classified as either a "common area" or a "unit." The Committee points out that the map identifies appellees' interests as units and that the first declaration states that "new units shall be subject ... to condominium ownership with all the incidents pertaining thereto ... upon filing." Thus, even though appellees have not made any improvements to the parcels in which they hold interests, the Committee contends that their interests are units under the declarations. In response, appellees assert that all undeveloped land within the expanded project area should be classified as common area, not as units. Units, they argue, are created only when a physical structure encloses space within an area. Until then, appellees claim, their interests are not units under the declarations but merely rights to build units.
Because the parties focus most of their arguments on the declarations, we begin our analysis there. We look first to the definition of unit appearing in both declarations:
A "unit" is
that part of the property owned in fee simple[3] for independent use and shall include the elements of the condominium property which are not owned in common with the owners of other units as shown on the map.
The term "independent use"[4] and the reference to "elements ... not owned in common" suggest that the owners of a unit have something exclusive of the other owners and may use the unit in any way they choose, subject only to a few restrictions not pertinent here. This reading is supported by another provision in the first declaration, which states that "each unit owner shall be entitled to exclusive ownership and possession of his unit." Appellees, however, have no physical or obvious legal means to exercise exclusive ownership and possession of the undeveloped land in which they own interests. Thus, we conclude that appellees' interests are not units.
If any question remains, other provisions of the declarations are dispositive. For example, both declarations further describe a unit as
[t]he space enclosed within the undecorated interior surface of its perimeter walls, floors and ceilings (being in appropriate cases the inner surfaces parallel to the roof plane of the roof rafters, and the projections thereof) projected, where appropriate, to form a complete enclosure of space.
Taken as a whole, these provisions indicate that a unit exists only when a structure *642 provides an enclosed area for the exclusive use and possession of the owner.[5]
To support its claim that the interests are units, the Committee relies heavily on paragraph 24.E of the initial declaration, which states:

Declaration Operative on New Units. The new units shall be subject to all the terms and conditions of this Declaration and of a supplemental Declaration, and the units therein shall be subject to condominium ownership with all the incidents pertaining thereto as specified herein, upon filing the supplemental map and supplemental Declaration in the office of the Davis County Recorder.
According to the Committee, this paragraph provides that when a developer records a survey map that marks a particular tract as a unit, the owner of that interest becomes a unit owner subject to full condominium ownership obligations. We think, however, that the Committee reads too much into this paragraph. Although the provision appears to contemplate that the filing of a map triggers condominium ownership obligations, the provision can accommodate the definition of a "unit" as an enclosed space without contradicting the paragraph's language. Furthermore, reading the provision as the Committee suggests would bring it into conflict with relatively clear language elsewhere in the declarations.
The Committee also relies on the Act to support its argument. When a condominium declaration is filed, all interest owners in a condominium project become subject to the Act. Utah Code Ann. §§ 57-8-2, -34(1). The Committee argues that the Act explicitly recognizes that a unit may exist without a physical structure and that the declarations should be read as consistent with the Act. We are directed, for example, to section 57-8-3(7), which provides:
"Condominium project" means a real estate condominium project; a plan or project whereby two or more units, whether contained in existing or proposed apartments, commercial or industrial buildings or structures, or otherwise, are separately offered or proposed to be offered for sale.
Id. § 57-8-3(7) (emphasis added).
We acknowledge that the Act anticipates that a condominium project may contain proposed units that are not yet constructed. However, this does not undermine our conclusion that for a unit to actually exist, it must be within a physically enclosed space. This conclusion is buttressed by section 57-8-3(8), which states:
"Condominium unit" means a unit together with the undivided interest in the common areas and facilities appertaining to that unit. Any reference in this chapter to a condominium unit includes both a physical unit together with its appurtenant undivided interest in the common areas and facilities....
Id. § 57-8-3(8) (emphasis added).
The Committee further contends that we should not accept appellees' characterization of their interest as a "right to build" because the Act does not recognize such an interest. Although we agree that the Act does not appear to anticipate the creation of a "right to build," none of its provisions prohibit the recognition of this type of interest. Consequently, the Act does not undermine *643 our construction of the otherwise relatively clear terms of the declarations. We do not need to determine the question of precisely what sort of interests appellees may own, beyond saying that their interests are not units.
We have considered the Committee's other arguments and find them to be without merit. State v. Carter, 776 P.2d 886, 896 (Utah 1989). We hold that the trial court did not err in ruling that appellees are not unit owners under the declarations or the Condominium Ownership Act.
Summary judgment in favor of appellees is affirmed.
HALL, Chief Justice, HOWE, Associate Chief Justice, STEWART and DURHAM, JJ., concur.
NOTES
[1] Appellees also possess "warranty deeds" identifying certain parcels of land within the project to which their interests pertain.
[2] These actions were authorized by the declarations and section 57-8-29 of the Code. See Utah Code Ann. § 57-8-29.
[3] The declaration's use of the term "fee simple" is consistent with the Act's provision deeming a "unit" and its undivided interest in the common area as "real property." Utah Code Ann. § 57-8-4.
[4] The declaration's requirement for "independent use" tracks the Act's definition of "unit," which is "a separate physical part of the property intended for any type of independent use, including one or more rooms or spaces located in one or more floors or part or parts of floors in a building...." Utah Code Ann. § 57-8-3(26). The Act's use of "separate physical part" further supports appellees' position.
[5] Other portions of the initial declaration are also at odds with the Committee's position. These provisions suggest that units come into existence only upon construction, and that until those units are constructed, the areas on which they are built are simply "sites." For example, paragraph 24.B states in part:

Declarant hereby reserves the right to expand the condominium project to include additional units of the same general type and of comparable quality in construction as the units in the present project, but no other assurances as to architecture, materials or type or size of units are made.
Another provision, paragraph 24.C, states:
Supplemental Declarations and Supplemental Maps. Such expansion may be accomplished by the filing for record by Declarant ... a supplement or supplements to this Declaration containing a legal description of the site or sites for new units, together with a supplemental map or maps containing the same information with respect to the new units as was required on the original map with respect to the initial units.